Your Honor, this is the second case of the morning, Paul People v. Michael Needham, case number 213-04-73, on behalf of Mr. Needham and Ms. Sherry Silver, and on behalf of the People, Ms. Joan Kirk. All right, ladies, are you both ready to proceed? Yes.  Good morning, Your Honors. Counselor, may it please the Court, I am Sherry Silver, and I'm representing Michael Needham in this case. I sat through the previous argument, and there was one point that I believe it was Justice Shostak that made, that there needs to be a consistent body of law. A consistent body of law that applies whether it's 11 months with six proceedings or, in this case, what appears to be a 214-01 petition that sat on the judge's desk and was sua sponte, dismissed. We argued in the petitioner's briefs that there are three bases for the vacator of the lower court sua sponte dismissal. All three of these bases are currently supported by precedent from this Court, other branches of the appellate court, and the Supreme Court. The first basis is that Mr. Needham failed to serve the state's attorney's office the proper way. He sent it via regular mail sent from his institution, and under this Court's precedent in Prado and Nitz and Supreme Court Rules 105 and 106, service by regular mail is inconsistent with the rules so that vacator and remand for further proceedings is required. Don't you think it would be prudent for the Supreme Court to allow service on a 214-01 the same as on a closed conviction petition? In terms of regular mail versus? Correct. Sure, but let the Supreme Court come down with that rule. That's not where we're at right now. The second basis, moving on, is that even if service in this case were found to be proper, which we're not saying that was, the lower court ruled on the petition within only seven days of filing, and under Laffern, or however you want to pronounce that name, which also included the sua sponte dismissal within 10 days of the filing of Laffern's petition, same as it here, the sua sponte dismissal must be vacated and the matter remanded for further proceedings. Doesn't the procedural due process that's already been afforded to a defendant, shouldn't that make a difference? How many times had the defendant challenged either his conviction or sentence? Interesting question. There's some hint that the court was, shall we say, fed up with Mr. Needham. There's an understatement, but honestly, Your Honor, there are cases that are much worse than this. This, he filed a post-conviction petition. He filed what was a letter and some sort of a rehearing on this court's ruling on the post-conviction petition, filed it in the wrong court, and he sent a letter to Justice Hudson, actually, even though Justice Hudson was here in the appellate court. He was the chief judge at the time. Right, right. But he sent it to King County, apparently thinking he was still there. And then there was what he called a motion judgment MSR or something like that, which I don't believe it was filed under 214.01 or anything. It was just a motion, and that was actually dismissed because he had not been granted leave to file the motion. There's nothing at that point in the record that shows that he had to file a motion for leave, but in fact, that motion was dismissed. And then he comes to this petition. So really, there hasn't been that much that he has filed in relation to other cases where there's thousands of pages of filings that really are meaningless. And your point is we shouldn't be examining the merit because our ruling could affect petitions that actually do have some merit. Exactly, exactly. And lastly, the last basis for the vacator is that the lower court incorrectly recharacterized this as a post-conviction petition, even though it was clearly labeled as a 214.01, and he even attached to the petition the photocopy of section 214.01. So under Shellstrom and Pearson, that recharacterization requires that he get notice and the opportunity to either withdraw the petition or amend it. The state really has no legitimate reason for offering any deviation from this existing case law. So we're asking only that your honors follow the existing law and vacate the sua sponte dismissal and amend it. Thank you. May it please the court, Joan Kripke on behalf of the people of the state of Illinois, counsel. I think what the court needs to address first is not the 214.01 petition.  Ms. Kripke, you filed a motion to cite additional authority in Ray Haley D. When you do that, it would be helpful if you would describe in your motion why you are citing that case. Why are you citing that case? I cited those two cases for the proposition that a court can look at the body, the content of a motion or a petition, and not just at the title in order to determine its purpose. The reason I did not, I never, whenever I've asked to cite additional authority, I have been instructed in the past that that was considered argument that you should not put in, and that was the reason I didn't. If the court would prefer a pinpoint site in the future, then I will do that. Excuse me. I think what we're up here on the issue before this court is whether the trial court abused its discretion in denying defendants motion for leave to file an amended 214.01 petition. So we're not looking at the petition itself. It's up here because the court denied his motion for leave to amend the 214.01. So the question then becomes, can a trial court order a defendant to ask leave of court before it files additional petitions or motions or whatever? On the one hand, you have the rule that a trial court is allowed to control its own docket, and in this case, as counsel pointed out, it was getting to the point of just numerous petitions after the case had been adjudicated against the defendant several times. On the other hand, a defendant does have the right to file a 214.01 petition. However, if we're looking at what we're up here on, on the motion for leave that was denied, what was the court looking at the underlying petition? The underlying petition was the 214.01. On its face, it was seven years late. I think it was seven years. If you can't, the only way you can overcome the late filing is if you show that there was something that was void about it and that it was entitled something along the lines of no one told me about MSR. Well, that does not, first of all, even if, and it's true, no one told him about the MSR. It was never raised in post-trial. It was never raised in post-conviction. It wasn't raised on direct. But the problem is, as you look at the McChristian case, McChristian says, we don't care that nobody, it's not that they don't care. It's irrelevant that nobody told the defendant because that is a statutory creation, and even if the defendant has not been apprised of the MSR, the court, it's read into the judgment order as if it had been pronounced at the time of judgment. So it doesn't void out the sentence, which doesn't allow the 214-01 even to be considered. So that's one of our arguments. If you're going to look at the 214-01 petition, I urge the court to look at what, for me, is a very confusing line of cases that has come down from this court, and I'm in the position of being a loser on two of them, which are diametrically opposed, and I'm not trying to turn this into a hat trick and lose again, but it's confusing. And what's interesting is one justice was on every single one of those opinions and another justice was on two of those opinions, and, Justice Jorgensen, you were also on one of those opinions. So in the Meskell case that we cite, in that case the court, the state was never served. They sent it to the AG, and they couldn't appear in court. They had no notice of it. But what Justice Burns said in Meskell, and I raised a jurisdictional issue, and I was shut down on that and it was very emphatically said that that was a bizarre argument, and what the court said in Meskell was we had in personam jurisdiction over the defendant who submitted himself to the jurisdiction of the court. We ruled against the defendant despite on the merits, and because the judgment was against the defendant, not against the people who had not been served, that's okay and we can do that. And the court said any other way of looking at it would be a bizarre result. And that's consistent with what Kuhn says, citing In re M.W., that only the party who hasn't been served can bring that challenge. Is that what you're arguing? Not can bring the challenge, but the court... I mean the objected jurisdiction. No, that's not what I'm saying. What I'm saying Meskell is holding is that when a 214-01 is improperly served, the court below can adjudicate it on the merits if it's against... That's what I'm saying. Oh, okay. Against the person who didn't serve. Against the person, not against the person, against the movant. It can rule against the movant. If the person did not properly serve someone else. Correct. Right. Caliendo cites to Meskell. And then we have Nitz, the other case that I lost in this court. Now, Nitz and Prado... You're not taking this personally, are you? I'm not. I'm just in this bizarre position of trying to argue which of my losers I like better. Nitz and Prado come up with basically the same result. If I were to choose between Nitz and Prado, I would agree with how Prado handled it by saying, we can't remand something that never commenced. But that's neither here nor there here because Nitz is disagreeing with Meskell, saying you can't even look at the merits of it. And so I think that Meskell and Caliendo are still good law. And Nitz never... When I argued Nitz, I went back and looked at my brief and thought, didn't I cite to Meskell? I never cited to Meskell. I was off on lack of notarization, another losing argument of mine. So Nitz never addressed it. And so therefore you have these two parallel lines of opinion that are going through this very court that says, yes, you can decide on the merits, no, you can't decide on the merits. And that's problematic. Obviously it's problematic. I mean, there's just no consistency among these rulings. And we would say that if you're going to follow Meskell, first of all, when the court denied the motion for leave to amend the 214-01, it could just look at the petition, the 214-01 petition on its face and see that it was not something that should be found in the defendant's favor. I mean, it was untimely, and the untimeliness could not be overborne by the issue that was raised. So... I just lost my train of thought. Well, since you lost your train of thought, let me ask you this. Okay. How do you address the recharacterization of this 214-01 petition? We cited specifically to what the court said. I don't believe counsel cited to the record in that case. And what the court said was, even if I were to consider this as a PC petition, that is not language that says I'm doing it. It's hypothetical. I stand on my brief on that. It was, as I said, the subjunctive mood, and it doesn't say that this is what the court did. But I think the problem that comes before the court is, first of all, can the trial court below? And I researched this, and I could not find anything that says a trial court can try to arrest frivolous petitions of all kinds before it by ordering the defendant to make a motion for leave to file such an action. Whenever I put something like that into my search, and perhaps I was doing it incorrectly, all I came up with was frivolousness relating to PC petitions. So I think that, in my opinion, when I'm looking at this case procedurally, that's what we're up here on, the denial of that motion, not the denial of the 214-01. And so I think how that is resolved is one issue. And even if you are to look at the 214-01, we would urge you to follow the cases of Meskel and Caliendo, which say this person put himself before the jurisdiction of the court. There's nothing there, and we're going to dismiss it. Are there any other questions? Thank you. Just very briefly, what we're here on is a dismissal of a 214-01. The motion for leave to file an amended petition or an amended 214-01 should really be looked at as a nullity. There's nothing under 214-01 that requires a petitioner to file such a motion. And granted, a court can manage its own docket, but the presumption is that something has been filed already, that needs to be managed. So you can't preclude somebody from filing a 214-01. If it has no merit, fine, wait the 30 days, let the state either waive or accept service, and then dismiss it. That's fine, but follow the rules that exist. What's your response to counsel's argument about Meskel and Caliendo, that the defendant submitted himself to the jurisdiction of the court, he cannot now complain that there's no jurisdiction because of improper service? I don't think we're arguing that there's no jurisdiction. He did submit himself to the jurisdiction of the court. So why can't we review the merits then? Those cases were decided prior to Prado, and Prado basically says, you don't hit the merits. You go right to the procedure, this is what the procedure should be, and this is why it should go back. One panel of this court cannot overrule another panel. So those cases are, they still stand for this. I know there's a dissent in a case by Justice Freeman suggesting that the last case should be the precedent, but that's not the law. We're not bound by either line of Prado, that line, or Meskel. We could decide we're going back and we're going to follow Meskel and Caliendo. That's possible. But on the other hand, at that point, it might be necessary then to file some sort of a PLA to resolve the dichotomy in this court. The Supreme Court may resolve it with Carter. I was just going to say that. Should we put these cases on hold? Yes. And wait for Carter? Yes. I know that Ms. Koros in the last argument asked that it be held in abeyance. We're asking the same thing. Carter is up there now. It was granted on the 24th of September. It could be that they're going to look at just the standing issue from Kuhn. I don't know. But it could also be that they're going to look at the merits and the procedure and everything else. And finally, the Supreme Court can resolve all of these discrepancies between the different districts of the appellate court. The only other thing I want to address is the recharacterization. When you look at the order which is attached to our initial brief, granted I didn't cite the exact language. I didn't think it was absolutely necessary since the order was right there. The court goes through, says that he files this petition for relief of judgment. But then the next one, two, three, four, five, six paragraphs discuss post-conviction petitions. And then the order saying that it's denied, again, the next two paragraphs, paragraph 89, still treat it as a post-conviction petition. I don't think there's any question that it was mischaracterized, that this was a 214-01. It was not a post-conviction, and it was mischaracterized by the court. If there's any other questions? Any discussion? Thank you both very much. We are adjourned.